Roger **ARKEBAUER**, Plaintiff,

v.

Michael **KILEY**, Individually and as State's Attorney of Shelby County, Illinois, Defendant.

No. 90–3206.

United States District Court, C.D. of Illinois, Springfield Division.

Nov. 30, 1990.

D. Peter Wise, Springfield, Ill., for plaintiff.

Carol J. Barlow, Asst. Atty. Gen., Springfield, Ill., for defendant.

## OPINION

RICHARD MILLS, District Judge:

One of the most fundamental maxims governing the relationship between the federal government and individual states is that federal courts should refrain from enjoining pending state criminal prosecutions. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

This principle is based upon the concept of Our Federalism, a recognition of and sensitivity to the legitimate interests of both state and national governments. *Id.* at 44, 91 S.Ct. at 750–51. The federal government, anxious as it may be to vindicate and protect federal rights, always must endeavor to do so in ways that will not unduly interfere with the legitimate activities of the states. *Id.*

The exceptions to this rule are both few and strictly applied. Absent a showing of bad faith, harassment, or other unusual circumstances calling for equitable relief, a federal court will not enjoin a pending state court prosecution. *Id.* at 54, 91 S.Ct. at 755. Further, before obtaining an injunction of a pending state court proceeding, an individual must demonstrate irreparable injury which is "both great and immediate" as well as establish that the threat to his federally protected rights cannot be eliminated by his defense against the state prosecution. *Id.* at 46, 91 S.Ct. at 751.

On April 12, 1988, Roger Arkebauer was indicted by a Shelby County, Illinois Grand Jury and charged with the offenses of solicitation to commit murder and conspiracy to commit murder. Ill.Rev.Stat. ch. 38, ¶¶ 8–1(a), 8–2(a) (1989). On August 30, 1990, Arkebauer filed an action in this Court pursuant to 42 U.S.C. § 1983 seeking to enjoin the state court prosecution. Arkebauer was scheduled to begin trial on Monday, September 17, 1990. On the preceding Friday, September 14, following a hearing on Arkebauer's motion for preliminary injunction, we granted the motion and preliminarily enjoined the state court prosecution.

## FACTS

The facts underlying this case are not in dispute. Because of the rarity with which federal courts enjoin state criminal prosecutions and for a clear understanding of what is at issue we here set forth the facts in some detail. Those facts are gleaned from the materials submitted in support of and in opposition to Arkebauer's complaint and motion for preliminary injunction as well as the state court opinion affirming the trial court's suppression of Arkebauer's statements. *People v. Arkebauer*, 198 Ill. App.3d 470, 144 Ill.Dec. 643, 555 N.E.2d 1162 (5th Dist.1990).

On January 15, 1988, Jack Ahola was the First Assistant State's Attorney for Macon county. At approximately 7:00 a.m. Ahola met with agents David McClearen and Lee Bensyl of the Illinois State Police. The agents had received information that Raymond Ruhl was attempting to hire a person to kill his wife. The events relating to the plot to murder Lisa Ruhl occurred in four separate counties—Shelby, Macon, Christian, and Champaign. The agents were aware that Arkebauer was a key figure in the murder for hire plot and they, along with Ahola, decided that Arkebauer should be brought in and asked to give information which would enable the agents to arrest Ruhl. At this meeting the agents and Ahola discussed making a deal with Arkebauer whereby he would not be prosecuted in exchange for information.

The agents then went to the Caterpillar Tractor Company where Arkebauer worked, picked up Arkebauer, and took him back to the Macon county State's Attorney's office. At the office Ahola told Arkebauer that "we" would not prosecute him if he agreed to help.[1] Arkebauer agreed to

---

1. Ahola testified at Arkebauer's suppression hearing that he could not say with certainty that the term "immunity" was not used with Arkebauer and that he did not place any geographi-

cooperate and provided information to Ahola and the State Police regarding the contemplated murder plot. Ahola then took Arkebauer before Macon County Circuit Judge Patton and obtained a search warrant and an eavesdrop order based upon Arkebauer's information. After obtaining the eavesdrop order Arkebauer placed a call to Ruhl from the state's attorney's office.

After participating in the eavesdrop, the agents discussed their plan to arrest Ruhl and told Arkebauer that it would be best if he did not go home on the chance that Ruhl would try to contact him there.

During the attempt to arrest Ruhl a shoot-out occurred and both Ruhl and agent Bensyl were killed. A second State Police officer was wounded. Concerned that Arkebauer had "tipped-off" Ruhl regarding the pending arrest, State Police agents interviewed Arkebauer in the early morning hours of January 16 at the Pana, Illinois police department. Based upon this and succeeding interviews as well as a polygraph examination the agents concluded that Arkebauer had not warned Ruhl of the forthcoming arrest.

During the investigation of the shooting and Arkebauer's possible involvement in warning Ruhl, Arkebauer contacted attorney Guy Casey who in turn contacted Ahola. At a meeting between these two, Ahola told Casey that Arkebauer had been promised immunity but that he had not taken Arkebauer before a judge to obtain formal immunity. See Ill.Rev.Stat. ch. 38, ¶ 106–1 (1989). When Casey suggested that Ahola should formalize the immunity agreement, he was told that Ahola could not do so as Ruhl was dead and there was no case pending.

Michael Kiley, the Shelby County State's Attorney, was contacted on January 15, 1988, by agent Bensyl regarding the potential prosecution of Ruhl. As a result of this conversation Kiley wrote a letter to the State Police summarizing his conversation with agent Bensyl. In the letter, Kiley stated that he and agent Bensyl had discussed briefly an arrangement entered into cal limits on the promise not to prosecute Arke-

by the Macon County State's Attorney's office in which a promise of a grant of immunity was given to an unknown individual who Kiley subsequently learned to be Arkebauer.

As previously mentioned, Arkebauer was indicted in Shelby County on April 12, 1988. Ahola testified that the indictments brought against Arkebauer in Shelby County were substantially the same charges for which Ahola promised Arkebauer he would not be prosecuted. Based upon Ahola's promise of immunity, Arkebauer moved to suppress his statements to the police and state's attorney and to dismiss the indictment. The trial court held that Arkebauer's statements had been "coerced" by the promise of immunity and were thus involuntary and had to be suppressed. The trial court denied Arkebauer's motion to dismiss the indictment.

The State appealed the trial court's order granting Arkebauer's motion to suppress. The Illinois Appellate Court, Fifth District, affirmed the trial court's ruling suppressing Arkebauer's statements. In the last substantive paragraph of its opinion, the appellate court states:

> [w]e note that while the State is correct that a State's Attorney of one county cannot bind another State's Attorney of another county with his promises, that problem does not arise here. The circuit court determined that [Arkebauer] could be prosecuted in Shelby County, and we find this a proper determination.

*People v. Arkebauer,* 198 Ill.App.3d 470, 144 Ill.Dec. 643, 555 N.E.2d 1162 (5th Dist. 1990).

### LAW

In seeking an injunction of the pending state court prosecution, Arkebauer relies upon the decision in *Rowe v. Griffin,* 676 F.2d 524 (11th Cir.1982). In *Rowe* an FBI informant reported that he had been with three Ku Klux Klansmen who killed a civil rights worker during the evening of March 25, 1965. After being assured of immunity by the Attorney General and an Assistant bauer.

Attorney General of the State of Alabama as well as by the FBI, Rowe provided further information regarding the murder and testified against the three Klansmen.

Thirteen years later, the district attorney of Lowndes County, Alabama, obtained new information regarding the murder which indicated that Rowe had down-played his role in the crime. Rowe was indicted in September, 1978 for murder and the prosecution was halted by the district court after holding that *Younger* abstention did not apply because the prosecution was in bad faith. On appeal the circuit court held that "in the absence of credible evidence that Rowe testified untruthfully or otherwise failed to perform his part of the bargain, the prosecution of Rowe, after Rowe was assured of immunity from prosecution by state prosecutors, [was] *per se* a bad faith prosecution." *Id.* at 526.

The circuit court applied a contractual analysis and stated: "[w]hen such a promise [of immunity] induces a defendant to waive his fifth amendment rights by testifying at the trial of his confederates or to otherwise cooperate with the government to his detriment, due process requires that the prosecutor's promise be fulfilled." *Id.* at 528. The *Rowe* court set forth a three-part test requiring the state defendant to establish that (1) an agreement was made; (2) the defendant performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government. *Id.* at 527–28.

On the other hand, the Defendant relies principally upon the decision in *Staten v. Neal*, 880 F.2d 962 (7th Cir.1989) in arguing that this Court should not enjoin Arkebauer's prosecution. Staten was imprisoned in the Vandalia Correctional Center in Fayette County, Illinois prior to being transferred to the Urbana Community Correctional Center in Champaign County, Illinois. Staten escaped from the Champaign County facility, was apprehended in Indiana, and returned to Iowa to face robbery charges.

The Iowa prosecutor, relying upon Illinois Department of Corrections records, and believing that Staten had escaped from the Fayette County facility, contacted the Fayette County State's Attorney who, also believing that Staten had escaped while still incarcerated in Fayette County, agreed to waive prosecution on the escape charge if Staten pled guilty to robbery in Iowa. After pleading guilty to the robbery in Iowa and completing his prison sentence, Staten was returned to Illinois and prosecuted by the Champaign County State's Attorney for escape.

Staten was convicted in a bench trial and his conviction was affirmed by the Illinois Appellate Court which held that a state's attorney in one county could not bind a state's attorney in another county under Illinois law. *People v. Staten*, 158 Ill. App.3d 971, 110 Ill.Dec. 761, 511 N.E.2d 938 (4th Dist.1987). The Illinois Supreme Court denied review. Staten then sought a writ of habeas corpus arguing that his prosecution was fundamentally unfair and violated the due process clause of the fourteenth amendment. The district court denied the writ and the circuit court affirmed.

The circuit court began by recognizing that a state's attorney in Illinois only has authority over offenses committed within his county. Ill.Const. of 1970 art. VI, § 19; Ill.Rev.Stat. ch. 14, ¶¶ 4, 5. Therefore, the court held that the Fayette County State's Attorney had no authority to promise not to prosecute an offense which occurred in Champaign County. The court then rejected Staten's argument that the Fayette County State's Attorney had either inherent or apparent agency authority for the Champaign County State's Attorney thus binding the Champaign County State's Attorney.

During its opinion the circuit court recognized that a state's attorney can bind all other state's attorneys in Illinois by a formal judicially approved grant of immunity. *Id.* at 964 (citing *Cruz v. Fitzgerald*, 66 Ill.2d 546, 6 Ill.Dec. 888, 363 N.E.2d 835 (1977)). In *Cruz* the Illinois Supreme Court held that a grant of immunity pursuant to Illinois statute was transactional in

nature and binding on all other state's attorneys even absent their consultation or agreement. Because Staten did not argue that he had been granted immunity, *Cruz* and its holding were not applicable to Staten's claim. *Id.*

In the case at bar, Defendant argues that because Arkebauer was not given judicially approved immunity pursuant to statute, *Cruz* is not applicable and the unique relationship between Illinois state's attorneys illustrated in *Staten* prevents Ahola's "promise not to prosecute" from being binding on any other state's attorney. Defendant then cites *People v. Hamm*, 136 Ill.App.3d 11, 90 Ill.Dec. 820, 482 N.E.2d 1103 (2d Dist.1985) and *People ex rel. Kunce v. Hogan*, 37 Ill.App.3d 673, 346 N.E.2d 456 (5th Dist.1976), *aff'd in part, rev'd in part*, 67 Ill.2d 55, 7 Ill.Dec. 63, 364 N.E.2d 50 (1977), *cert. denied*, 434 U.S. 1023, 98 S.Ct. 750, 54 L.Ed.2d 771 (1978), for the proposition that Illinois does not recognize the concept of "equitable immunity" as applied in *Rowe*.

In *Hamm* the defendant argued that the trial court's refusal to grant use immunity to a defense witness to compel his testimony violated the defendant's sixth amendment right to compel witnesses on his behalf. The appellate court held that a defendant had no right to compel a state's attorney to grant immunity to a defense witness for the defendant to obtain relevant evidence. In *Kunce* the appellate court held that the trial court's attempt to grant immunity to a defendant to compel the defendant to communicate with a probation officer for the purpose of preparing a presentence report was improper. Neither of these cases discussed the concept of equitable immunity which Arkebauer urges this Court to adopt.

In fact, our research discloses no Illinois case which either accepts or rejects the

concept of "equitable immunity." In *United States v. Eckhardt*, 843 F.2d 989, 995 (7th Cir.), *cert. denied*, 488 U.S. 839, 109 S.Ct. 106, 102 L.Ed.2d 81 (1988) in the context of a federal prosecution the circuit court states "[t]his circuit has neither accepted nor rejected the doctrine of equitable immunity." Therefore, if the court's decision in *Staten* is not controlling we are left with an issue of first impression in this circuit.[2]

The decision in *Staten* was premised upon the lack of authority of the Fayette County State's Attorney to plea bargain concerning a crime which occurred in Champaign County. The Fayette County State's Attorney simply had no jurisdiction over a crime which occurred in Champaign County. On the other hand, the events underlying Arkebauer's case occurred in four counties including Macon and Shelby. Therefore, the Macon County State's Attorney could have properly granted Arkebauer immunity if he had completed the process by taking Arkebauer before a judge as required by Illinois law. If Arkebauer had been granted such formal judicial immunity it would have been binding on the Defendant. *People ex rel Cruz v. Fitzgerald*, 66 Ill.2d 546, 6 Ill.Dec. 888, 363 N.E.2d 835 (1977).

## CONCLUSION

The question thus becomes whether this Court should apply the concept of "equitable immunity" to give Arkebauer the benefit of his bargain.

The circuit court clearly recognizes the benefit of promises of immunity:

> Promises of immunity are important weapons in the fight against large-scale criminal enterprises; the government often snares big fish with information gained from little fish. In return, the

---

2. In *United States v. Hayes*, 646 F.Supp. 146 (N.D.Ind.1986) the district court cited *Rowe* and recognized the concept of equitable immunity. However, *Hayes* failed to make a *prima facie* showing that an immunity agreement had been made and thus the court did not have to reach the question of enforcement. Also, the circuit court cited the *Rowe* decision in *United States v. Brimberry*, 744 F.2d 580, 586 & n. 6 (7th Cir.

1984) and remanded with instructions for the district court to conduct a *Kastigar* hearing to determine whether any of the defendants immunized statements were used as evidence. After recognizing that "any agreement made by the government must be scrupulously performed and kept," *id.* at 587, the court held that if the government violated its agreement the indictment must be dismissed. *Id.* at 588.

little fish are granted immunity from prosecution based upon the information they provide to the government. The system works, however, only if each side keeps its end of the bargain: the informant must provide accurate information, and the government must not use that information against the informant.

*United States v. Palumbo*, 897 F.2d 245, 246 (7th Cir.1990). While *Palumbo* was a federal prosecution implicating only use immunity, the same principle applies with equal force when the government promises *transactional* immunity.

The Illinois circuit and appellate courts clearly found that Arkebauer was promised immunity by both the Macon County assistant State's Attorney and by agents of the Illinois State Police. *People v. Arkebauer*, 198 Ill.App.3d 470, 144 Ill.Dec. 643, 555 N.E.2d 1162 (5th Dist.1990). Arkebauer upheld his end of the bargain and his subsequent prosecution by the Shelby County State's Attorney is clearly upon the same charges for which he was promised immunity by Ahola and the State Police.

In *Younger* the Supreme Court held that an individual seeking to enjoin a pending state court prosecution must demonstrate that his federally protected rights cannot be vindicated by his defense to the state court proceeding. *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 751–52, 27 L.Ed.2d 669 (1971). The very prosecution of Arkebauer by the Shelby County State's Attorney violates Arkebauer's right to due process under the fourteenth amendment. Arkebauer's right *not to be prosecuted* for these offenses would be irretrievably lost if he were required to defend the state court prosecution and the irreparable harm he would suffer would be both great and immediate.

We hold that the concept of "equitable immunity" as defined by *Rowe* applies to this case. Arkebauer performed his end of the bargain and his prosecution by the Defendant is in bad faith.

*Ergo*, Defendant's motion to dissolve the preliminary injunction (d/e 11) is DENIED. The Defendant is permanently enjoined from prosecuting the Plaintiff for the offenses of conspiracy to commit murder and solicitation to commit murder arising out of the events underlying this case.

Case CLOSED.