**Roger ARKEBAUER, Plaintiff–Appellee,**

v.

**Michael KILEY, Individually and as State's Attorney of Shelby County, Illinois, Defendant–Appellant.**

No. 91–1058.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1992.

Decided Feb. 9, 1993.

Rehearing and Rehearing En Banc Denied March 18, 1993.

**1352**

D. Peter Wise (argued), Metnick, Barewin, Wise & Cherry, Springfield, IL, for plaintiff-appellee.

Jerald S. Post, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Civil Appeals Div., Chicago, IL, Carol J. Barlow, Asst. Atty. Gen., Office of the Atty. Gen., Environmental Control Div., Springfield, IL, for defendant-appellant.

John X. Breslin, Office of the State's Atty., Ottawa, IL, Michael M. McFatridge, Patrick J. Delfino, Darien, IL, for amicus curiae Illinois State's Attorneys Ass'n.

George F. Taseff, Jennings, Novick, Taseff, Smalley & Davis, Bloomington, IL, J. Steven Beckett, Beckett, Crewell & Kelso, Urbana, IL, for amicus curiae Illinois Attorneys for Criminal Justice.

Jeffrey S. Weiner, Weiner, Robbins, Tunkey & Ross, Miami, FL, for amicus curiae National Ass'n of Criminal Defense Lawyers.

Before CUDAHY and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

In exchange for a promise that he would not be prosecuted, the appellee, Roger Arkebauer, gave information to the Macon County State's Attorney regarding Raymond Ruhl's plan to murder his wife. Mr. Arkebauer was later indicted in Shelby County for his involvement in the scheme. The Illinois state trial court denied his motion to dismiss the indictment. The district court, however, entered a permanent injunction against the state prosecution on the ground that the doctrine of equitable immunity insulated Mr. Arkebauer from suit. *Arkebauer v. Kiley*, 751 F.Supp. 783 (C.D.Ill.1990). The State's Attorney for Shelby County has appealed the imposition of the injunction. For the reasons that follow, we reverse the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

The facts, at least to the extent they were developed in the earlier proceedings, are not in dispute, and we rely heavily on the accounts recited in both *Arkebauer v. Kiley*, 751 F.Supp. 783 (C.D.Ill.1990), and *People v. Arkebauer*, 198 Ill.App.3d 470, 144 Ill.Dec. 643, 555 N.E.2d 1162 (1990).

On January 15, 1988, Jack Ahola, then First Assistant State's Attorney of Macon County, Illinois, met with Illinois State Police Agents McClearen and Bensyl. The agents had obtained information that Raymond Ruhl was attempting to hire someone to kill his wife. They also had been informed that Roger Arkebauer was a key figure in the plot. The officers questioned Mr. Arkebauer; during the course of the interrogation Ahola told Mr. Arkebauer that, if he cooperated, "we" would not prosecute him, and Mr. Arkebauer agreed to help.[1] *Arkebauer*, 144 Ill.Dec. at 645, 555 N.E.2d at 1164. Events relating to the murder plot had taken place in Shelby, Champaign, and Christian Counties in addition to Macon County. Nevertheless, Ahola did not tell Mr. Arkebauer that the agreement applied only to Macon County. Ahola denied that he promised the defendant immunity, and he stated that he never discussed transactional immunity with the defendant. *Id.* However, "Ahola admitted that he could not say with absolute certainty that the term 'immunity' was not used in

---

1. Mr. Arkebauer testified that before he and the officers arrived at Ahola's office, the state police officers had said that they were authorized to offer him immunity for his cooperation. The officers told him that the State's Attorney would elaborate on this offer. *Arkebauer*, 144 Ill.Dec. at 650, 555 N.E.2d at 1169. Mr. Arkebauer stated that he asked Ahola if this were "full immunity," and Ahola responded that it was.

his discussion with [Arkebauer]." *Id.* It is also clear that, in his discussions with the defendant, Ahola did not place geographic limitations on the promise not to prosecute. *Id.* Mr. Arkebauer agreed to cooperate and supplied information relating to the planned murder to Ahola and the State Police. On the basis of that information, a search warrant and an eavesdrop order were obtained.[2] Subsequently, Mr. Arkebauer participated in the eavesdrop by calling Ruhl from the State's Attorney's office. Ahola testified that Mr. Arkebauer did all that was expected of him,[3] although it was also anticipated that Mr. Arkebauer would testify against Ruhl at a later date. *Id.*

Following surveillance, the agents engaged Ruhl in a shoot-out while attempting to arrest him. In the course of this encounter, both Ruhl and Agent Bensyl were killed and another police agent was wounded. The agents at first suspected that Mr. Arkebauer had tipped off Ruhl that the police were coming for him, but, following several interrogations and a polygraph test, they became convinced that Mr. Arkebauer had not done so. *Id.* at 645–46, 555 N.E.2d at 1165–66. Soon after the shoot-out Mr. Arkebauer was interviewed by Jack Eckerty, a sergeant with the Illinois State Police, and Agent Erlenbush. At the outset of questioning, Mr. Arkebauer told Sergeant Eckerty that he had been promised immunity by Ahola. He was not corrected; nor did Sergeant Eckerty attempt to confirm this statement.

On February 3, 1988, Michael Mannix, a special agent with the Illinois State Police in the Division of Internal Investigation, and Agent Erlenbush questioned Mr. Arkebauer at his home. They advised Mr. Arkebauer of his *Miranda* rights, and Agent Mannix testified that Mr. Arkebauer told

them that he had immunity in Macon County. Agent Mannix said that they were not engaged in a Macon County investigation and proceeded to question him. They also told Mr. Arkebauer that it was police procedure to advise everyone of their rights prior to questioning.

On February 9, 1988, Agent Mannix interviewed Mr. Arkebauer after advising him of his rights. Agent Erlenbush had told Agent Mannix that he had heard of a promise not to prosecute or a promise of immunity for Mr. Arkebauer in Macon County. Finally, the agents attempted again to question Mr. Arkebauer, but he refused to speak with them because he had learned that his bank records had been subpoenaed.

On March 17, 1988, Mr. Arkebauer first spoke with Guy Casey, an attorney, and told him that he believed he had been given immunity and that all of his conversations with police agents had been covered by this grant. Casey spoke with Ahola on several occasions. Casey remarked that the agreement not to prosecute had been made but had not been formalized. *See* Ill.Rev.Stat. ch. 38, para. 106–1 (1987).[4] Ahola declined the invitation to formalize it at that point because Ruhl was dead and no case was pending.

Prior to the shoot-out, Agent Bensyl had contacted Michael Kiley, Shelby County State's Attorney, advising him of the Ruhl plot and discussing possible prosecution of Ruhl in Shelby County. Mr. Kiley memorialized this conversation in a letter to the Illinois State Police dated January 20, 1988. Mr. Kiley maintains that he learned from Agent Bensyl that someone had been promised "immunity" for providing information in relation to the matter, but only later learned that it was Mr. Arkebauer. Mr.

---

**2.** During the judicial proceedings on these matters, no mention was made of an immunity grant. *See Arkebauer,* 144 Ill.Dec. at 645, 555 N.E.2d at 1164.

**3.** At least one investigative officer, Agent McClearen, disagreed on the extent of Mr. Arkebauer's cooperation and believed that the defendant's participation in the scheme was far more extensive. *Arkebauer,* 144 Ill.Dec. at 647, 555 N.E.2d at 1166.

**4.** This section provides as follows:

In any investigation before a Grand Jury, or trial in any court, the court on motion of the State may order that any material witness be released from all liability to be prosecuted or punished on account of any testimony or other evidence he may be required to produce.

Kiley testified that Agent Bensyl asked him if he would be interested in arriving at a similar arrangement with the informant in Shelby County.

On April 12, 1988, Mr. Arkebauer was indicted in Shelby County on substantially the same charges (solicitation and conspiracy to commit murder) from which he enjoyed freedom from prosecution in Macon County.

### B. *Earlier Judicial Proceedings*

#### 1. State court

Mr. Arkebauer's first line of attack against the charges was to file with the Illinois trial court a motion to suppress the statements he had made to the police and a motion to dismiss the indictment. The trial court determined that the statements to the police had been involuntary and granted the motion to suppress. The court refused, however, to dismiss the Shelby County indictment. With respect to the suppression motion, the trial court ruled that, because Mr. Arkebauer had not been told that his freedom from prosecution was limited to Macon County, "he reasonably believed that he had been promised immunity from prosecution and that the promise could be fulfilled as long as Arkebauer cooperated with the prosecution and the police investigation of Raymond Ruhl." *People v. Arkebauer*, No. 88–CF–17, Circuit Court Record Sheet (Dec. 22, 1988). The court also found that Mr. Arkebauer had "fulfilled his promise of cooperation until he discovered that he was going to be prosecuted in Shelby County." *Id.*

As for the motion to dismiss the charges, the trial court grounded its decision on the fact that Ahola had not sought statutory transactional immunity for Mr. Arkebauer, which would have immunized Mr. Arkebauer in Shelby as well as Macon County. The court relied on *People v. Staten*, 158 Ill.App.3d 971, 110 Ill.Dec. 761, 511 N.E.2d 938 (1987), for the proposition that a state's attorney of one county cannot bind a state's attorney from another county regarding activity in the latter county. The court found that Ahola never promised Mr.

Arkebauer immunity from any crime committed in Shelby County and that the Shelby County State's Attorney never ratified Ahola's promise. Circuit Court Record Sheet. The court stated that "the application of the doctrines [in *Rowe v. Griffin*, 676 F.2d 524 (11th Cir.1982) and *People v. Bogolowski*, 326 Ill. 253, 157 N.E. 181 (1927)] to this case does not require dismissal." Circuit Court Record Sheet.

The State appealed the suppression of statements and the Appellate Court of Illinois affirmed. *Arkebauer*, 198 Ill.App.3d 470, 144 Ill.Dec. 643, 555 N.E.2d 1162. The court noted that, although Mr. Arkebauer had not been granted transactional immunity pursuant to statute or use immunity, *id.* 144 Ill.Dec. at 652, 555 N.E.2d at 1171, Mr. Arkebauer was promised that he would not be prosecuted for the crimes under investigation by both the Assistant State's Attorney for Macon County and by the Illinois State Police. *Id.* at 644, 652, 555 N.E.2d at 1163, 1171. However, said the court, statements are not necessarily voluntary because a warning about *Miranda* rights has been administered and waived or because the statements were obtained on a promise of immunity. The totality of circumstances must be evaluated. The court concluded that

> [i]t was eminently reasonable for the defendant to believe that his agreement applied to his subsequent interviews, for there was a continuity of agents conducting the interviews, in that the agents were all with the Illinois State Police; the subject matter of the interviews related to the same ongoing investigation as the one covered by his agreement; and the defendant was never disabused of his belief that he would not be prosecuted by any of the agents at the interviews.

*Id.* at 62, 555 N.E.2d at 1171. Finally, taking into consideration the totality of the circumstances under which Mr. Arkebauer gave his statements, the court found that the statements were indeed involuntary.

Although the issue was not before it on

appeal,[5] the appellate court remarked at the close of its opinion:

> We note that while the State is correct that a State's Attorney of one county cannot bind another State's Attorney of another county with his promises, that problem does not arise here. The circuit court determined that the defendant could be prosecuted in Shelby County, and we find this a proper determination....

*Id.*

### 2. Federal district court

Mr. Arkebauer next brought an action pursuant to 42 U.S.C. § 1983 to enjoin the state prosecution because of the immunity he had been promised. The district court issued a preliminary injunction, and the State moved to dismiss. The district court, however, entered a permanent injunction, holding that the doctrine of equitable immunity precluded the prosecution. *Arkebauer v. Kiley*, 751 F.Supp. 783 (C.D.Ill. 1990).

In beginning its analysis, the district court focused on the State's challenge to the propriety of federal injunctive relief because of the rule set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). It acknowledged that *Younger* would not pose a bar to a federal injunction against ongoing state criminal proceedings only if there were a showing of "bad faith, harassment, or other unusual circumstances calling for equitable relief." *Arkebauer*, 751 F.Supp. at 784 (citing *Younger*, 401 U.S. at 54, 91 S.Ct. at 755). Likewise, the district court also noted that to qualify for an injunction, there must be great and immediate irreparable injury and a threat to federally protected rights that cannot be remedied in the state prosecution. *Id.* (citing *Younger*, 401 U.S. at 46, 91 S.Ct. at 751).

Nevertheless, the district court concluded that injunctive relief was warranted. The district court grounded its decision on the reasoning of the Eleventh Circuit in *Rowe v. Griffin*, 676 F.2d 524 (11th Cir. 1982). In that case, the court held that a former FBI informant who had been granted immunity from prosecution by the attorney general of the state in return for his testimony in other prosecutions was entitled, as a matter of federal due process, to equitable immunity when, some thirteen years later, another prosecutorial official of the state attempted to prosecute him on the basis of newly discovered evidence. Relying on what it termed the "[a]nalogous precedent," *id.* at 528, of *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), which held that a defendant who pleads guilty as a result of a plea bargaining agreement has a due process right to the enforcement of that bargain, the *Rowe* court employed a contractual analysis to determine that prosecution following a promise of immunity that is fully performed constitutes per se bad faith prosecution for purposes of an exception to the *Younger* doctrine. *Rowe*, 676 F.2d at 528. In effect, the Eleventh Circuit reasoned that the assurances of immunity from prosecution in return for the informant's testimony were the functional equivalent of a plea bargain and that failure of the state to abide by the agreement was a per se bad faith prosecution.

In the view of the district court, Mr. Arkebauer was entitled to the same treatment as Rowe. The court prefaced its analysis by noting this court's statement in *United States v. Palumbo*, 897 F.2d 245, 246 (7th Cir.1990), on the importance of promises of immunity "in the fight against large-scale criminal enterprises." It then noted that Mr. Arkebauer had "upheld his end of the bargain and his subsequent prosecution by the Shelby County State's Attorney is clearly upon the same charges for which he was promised immunity by Ahola and the State Police." *Arkebauer*, 751 F.Supp. at 788. Moreover, continued the district court, "[t]he very prosecution of Arkebauer by the Shelby County State's Attorney violates Arkebauer's right to due process under the fourteenth amendment.

---

**5.** The record contains no indication that Mr. Arkebauer cross-appealed the denial of the mo-

tion to dismiss the indictment.

Arkebauer's right *not to be prosecuted* for these offenses would be irretrievably lost if he were required to defend the state court prosecution and the irreparable harm he would suffer would be both great and immediate." *Id.*

In adopting the foregoing analysis, the district court rejected the state's submission that this case is controlled by the holding in *Staten v. Neal,* 880 F.2d 962 (7th Cir.1989), that a state's attorney in one county does not have the authority to bind a state's attorney in another county absent a judicially-approved grant of immunity. *Id.* at 964 (citing *People ex rel. Cruz v. Fitzgerald,* 66 Ill.2d 546, 6 Ill.Dec. 888, 363 N.E.2d 835 (1977)). The district court distinguished *Staten* on the ground that, in *Staten,* the State's Attorney for Fayette County had no authority to plea bargain regarding a crime that had actually occurred in another county; therefore equitable immunity could not have been implicated because there was no chance that proper transactional immunity could have been effectuated. Here, however, Ahola clearly had jurisdiction over the crime in Macon County and could have taken Mr. Arkebauer before a judge to obtain transactional immunity. *Arkebauer,* 751 F.Supp. at 787. Having determined that irreparable injury would flow from the prosecution itself under these circumstances, the district court applied the *Rowe* per se bad faith notion to except the case from the *Younger* bar. The district court accordingly entered a permanent injunction against the state court prosecution.

## C. *Submissions of the Parties on Appeal*

Because of the novelty of the issue presented, we shall set forth, in more detail than customary, the position of each party in this appeal.

### 1. The position of the Shelby County State's Attorney

The State's Attorney emphasizes the strong policy embodied in the *Younger* doctrine that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Younger,* 401 U.S. at 45, 91 S.Ct. at 751. It is necessary, submits the State's Attorney, for the applicant to show a bad faith prosecution, harassment, or some other unusual or extraordinary circumstance that would call for equitable relief. *Id.* at 54, 91 S.Ct. at 755.

The State's Attorney first argues that this case does not involve a bad faith prosecution. There is no prosecution based on impermissible criteria such as race or religion. Nor is there any indication that the state has failed to provide adequate procedural safeguards. Turning to the district court's analogy to plea bargains, the State's Attorney suggests that the situation before us is significantly different. In a plea bargain, continues the State's Attorney, the defendant relinquishes all the protections concomitant with the right to trial. Here, the only protection implicated is the right against self-incrimination, a right that is coextensive with the protections provided by a direct grant of use immunity. The Illinois courts have already suppressed that testimony and thus protected Mr. Arkebauer's right against self-incrimination. Therefore, at the time that Mr. Arkebauer asked the district court to grant injunctive relief, there was no federal right in jeopardy and the federal court could not, under the strictures of *Younger,* enter an injunction.

Relying on *United States v. Eckhardt,* 843 F.2d 989 (7th Cir.), *cert. denied,* 488 U.S. 839, 109 S.Ct. 106, 102 L.Ed.2d 81 (1988), the State's Attorney argues that this court has never recognized the concept of equitable immunity. Nevertheless, he continues, such a doctrine still would not preclude prosecution in this case. Like the defendant in *United States v. Andrus,* 775 F.2d 825 (7th Cir.1985), the only thing given up by Mr. Arkebauer, his right against self-incrimination, has been protected by the state court's suppression of the statements; he is in no worse position than he was before he spoke with the Macon County State's Attorney.

Finally, the Shelby County State's Attorney argues that Mr. Arkebauer is in effect arguing for transactional immunity, an im-

munity that the Macon County State's Attorney could not, as a matter of state law, confer without the approval of the court. Mr. Arkebauer, submits the State's Attorney, is charged with the responsibility of knowing the limits of the authority of the state officials with whom he deals. In any event, the State's Attorney for Shelby County ought not be equitably bound by the actions of another government official whose actions he could not control.

### 2. The position of Mr. Arkebauer

As one might expect, Mr. Arkebauer's position tracks, in large measure, the opinion of the district court. Mr. Arkebauer contends that the pendency of the criminal charge against him, despite the assurances of the Macon County State's Attorney, constitutes the threat of great and irreparable injury that justifies the use of the federal injunctive power despite the strictures of *Younger.* Having been granted absolute immunity from prosecution, he is entitled, he submits, to be free not only from the possibility of loss of liberty in the case of conviction but also from the "anxiety, fear, frustration and expense of being prosecuted." Appellee's Br. at 17. It is, he continues, "the very prosecution that jeopardizes [his] due process rights." *Id.* He stresses that this court has emphatically stated that any agreement made by the government, including a grant of immunity from prosecution, "must be scrupulously performed and kept." *United States v. Brimberry,* 744 F.2d 580, 587 (7th Cir.1984) (quoting *United States v. Lyons,* 670 F.2d 77, 80 (7th Cir.), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982)), *cert. denied,* 481 U.S. 1039, 107 S.Ct. 1977, 95 L.Ed.2d 817 (1987). The mere suppression of his statements, he argues, does not give him the benefit of his bargain with the government—freedom from prosecution through transactional, not use, immunity.

The prosecution is not only being brought in bad faith, continues Mr. Arkebauer, but it also constitutes "extraordinary circumstances" as that term is used in *Younger.* Relying on Judge Thornberry's

concurring opinion in *Rowe,* Mr. Arkebauer submits that the injunction is necessary not only to protect what the Illinois Appellate Court deemed to be his objectively reasonable expectations but also to protect his actual subjective expectations. Public policy concerns, he suggests, also support the enforcement of his bargain because promises of immunity are important weapons in the fight against crime. *See Palumbo,* 897 F.2d at 246.

## II

## DISCUSSION

### A. *Standard of Review*

We review de novo the district court's decision to deny a motion to abstain under *Younger. Gartrell Constr. Inc. v. Aubry,* 940 F.2d 437, 441 (9th Cir.1991).

### B. *The Younger Doctrine*

While it is now well-established that the general prohibitions of the Anti–Injunction Act, 28 U.S.C. § 2283, do not apply to civil rights actions,[6] it is also well-established, under the principles enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), that, except in very unusual situations in which it is necessary to prevent immediate irreparable injury, a federal court should not enjoin an ongoing state criminal proceeding that was commenced prior to the institution of the federal suit. *Samuels v. Mackell,* 401 U.S. 66, 69, 91 S.Ct. 764, 766, 27 L.Ed.2d 688 (1971). This principle is grounded, the Supreme Court has noted, in two policy concerns. The first is the "basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger,* 401 U.S. at 43–44, 91 S.Ct. at 750. The second principle, described by Justice Black as "an even more vital consideration," is the concern of " 'comity,' that is, a proper respect for state functions." *Id.* at 44, 91 S.Ct. at

---

6. *See Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct.

2151, 32 L.Ed.2d 705 (1972).

750. We elaborated on these fundamental policy concerns in *W.C.M. Window Co. v. Bernardi*, 730 F.2d 486, 490 (7th Cir.1984):

> The *Younger* doctrine is based on, and its contours established by, two principles of equity jurisprudence. The first is that an injunction is an extraordinary remedy, rarely available as a matter of right and never more extraordinary than when, if granted, it would prevent government officials from proceedings under a statute founded on important state interests against a violator of the statute; such an injunction would offend comity and federalism. The second principle is that an injunction will not be issued when the plaintiff has an adequate remedy at law, which he does if he can assert the ground on which he seeks an injunction as a defense to the very proceeding that the injunction would put a stop to.

■ A federal injunction can halt the progress of a pending state criminal proceeding only on a "showing of bad faith, harassment, or any other unusual circumstances that call for equitable relief." *Younger*, 401 U.S. at 54, 91 S.Ct. at 755.[7] The exact contours of these exceptions to the *Younger* doctrine have been the subject of a good deal of litigation but, to this day, they remain somewhat indistinct. However, it has been clear, from the very beginning, that the exceptions provide a very narrow gate for federal intervention in pending state criminal proceedings. Indeed, as Professor Wright points out,[8] in *Younger* itself Justice Black seemed to define "bad faith" and "harassment," whether these terms be considered two different concepts or the same concept, as amounting to a flagrant violation of express constitutional rights. *See Younger*, 401 U.S. at 53, 91 S.Ct. at 755 (quoting *Watson v. Buck*, 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)). More recent caselaw of the Supreme Court has done nothing to alter this perspective. *See Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619, 626, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986) (noting that *Younger* bars injunction "except in the very unusual situation that an injunction is necessary to prevent great and immediate irreparable injury"); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 1212, 43 L.Ed.2d 482 (1975) (referring to "these narrow exceptions"). Indeed, in *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6, 95 S.Ct. 1524, 1531 n. 6, 44 L.Ed.2d 15 (1975), the Court noted that in the *Younger* context, bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." The caselaw of the circuits has echoed this same theme. " '[A] showing of bad faith (prosecution) is equivalent to a showing of irreparable injury for purposes of the comity restraints defined in *Younger*.' " *Wilson v. Thompson*, 593 F.2d 1375, 1382 (5th Cir.1979) (quoting *Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir.), *cert. denied*, 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972)). "The harm posed by bad faith prosecution is both immediate and great, and defending against the state proceedings would not be an adequate remedy at law because it would not ensure protection of the plaintiff's federal constitutional rights." *Collins v. County of Kendall, Ill.*, 807 F.2d 95, 98 (7th Cir.1986) (citing *Younger*, 401 U.S. at 46, 91 S.Ct. at 751), *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987).[9] We have elaborated on the type of showing required when a

---

7. In *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), a companion case to *Younger*, the Court held that, when injunctive relief is precluded, declaratory relief is also unavailable.

8. 17A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 4255 (1988).

9. In *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), a pre-*Younger* case

that the *Younger* Court analyzed extensively, bad faith and harassment were illustrated by the prosecutor's repeated threats of prosecution without "any expectation of securing valid convictions." *Younger*, 401 U.S. at 48, 91 S.Ct. at 752 (quoting *Dombrowski*, 380 U.S. at 482, 85 S.Ct. at 1118–19). *See also Fitzgerald v. Peek*, 636 F.2d 943 (5th Cir.) (holding that bad faith is established when the prosecution was motivated by retaliation or deterrence), *cert. denied*, 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981).

plaintiff asserts bad faith prosecution as a *Younger* exception:

> [the plaintiff] must allege specific facts to support an inference of bad faith. 'The *Younger* rule, as applied in *Hicks* [*v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975)], requires more than a mere allegation and more than a "conclusory" finding to bring a case within the harassment exception.' *Grandco Corp. v. Rochford*, 536 F.2d 197, 203 (7th Cir.1976). This specific evidence must show that state prosecution 'was brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights.' *Wilson*, 593 F.2d at 1383.

*Collins*, 807 F.2d at 98.

The more generalized formulation of "extraordinary circumstances" has also given little hope to those who might prefer a relaxation of the *Younger* rule:

> The very nature of "extraordinary circumstances," of course, makes it impossible to anticipate and define every situation that might create a sufficient threat of such great, immediate, and irreparable injury as to warrant intervention in state criminal proceedings. But whatever else is required, such circumstances must be "extraordinary" in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation.

*Kugler*, 421 U.S. at 124–25, 95 S.Ct. at 1531.

## C. *Application to the Case*

■ We turn now to the facts of the case before us. Our task is a narrow one; we must determine whether either of these narrow exceptions to the *Younger* rule applies.[10] As we have noted previously, the district court was of the view that this case ought to be governed by the holding of the Eleventh Circuit in *Rowe v. Griffin*, 676 F.2d 524 (11th Cir.1982). In that case, the court held that a former FBI informant who had been granted absolute immunity from prosecution by the Attorney General of the state in return for his testimony in other prosecutions was entitled, as a matter of federal due process, to equitable immunity when, some thirteen years later, another prosecutor attempted to bring charges on the basis of newly discovered evidence. Even if we assume, for the sake of argument, that the result in *Rowe* was correct,[11] the mere recitation of the circumstances present in that case emphasizes that the situation before us is, qualitatively, starkly different. In *Rowe*, there was no question that a valid immunity agreement existed. Nor was there any question of a breach. By contrast, here the State's Attorney of Shelby County never made any commitment to the defendant. Nor has it been established on this record that the

---

**10.** No argument has been made to us (except in reply to our question at oral argument), and no argument was made to the district court, that the state judicial system affords an adequate opportunity to raise the federal due process issue. *See Moore v. Sims,* 442 U.S. 415, 430, 99 S.Ct. 2371, 2380, 60 L.Ed.2d 994 (1979); *Brunken v. Lance,* 807 F.2d 1325, 1331 (7th Cir.1986). We note, however, that the matter of immunity was raised by a motion to dismiss. Moreover, while Illinois procedure apparently affords no right of direct appeal, the possibility of relief through the extraordinary writ of prohibition may well not be foreclosed. *See People ex rel. Cruz v. Fitzgerald,* 66 Ill.2d 546, 6 Ill.Dec. 888, 363 N.E.2d 835 (1977). The Supreme Court has emphasized that federal proceedings are no substitute for an appeal. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975). It has also noted that a state litigant should be expected to utilize the ancillary proceedings permitted by state law to

obtain an adjudication of the constitutional issue. *See Juidice v. Vail,* 430 U.S. 327, 337 n. 14, 97 S.Ct. 1211, 1218 n. 14, 51 L.Ed.2d 376 (1977) (noting that an extant order of contempt was subject to a motion to vacate and, with respect to its penalties, a stay or a temporary restraining order).

**11.** In *United States v. Eckhardt,* 843 F.2d 989, 995 (7th Cir.1988), this circuit explicitly reserved judgment on the existence of a general doctrine of equitable immunity. We also note that the *Rowe* court was not unanimous in its holding that the state's breach of the plea agreement was a per se bad faith prosecution. *See Rowe v. Griffin,* 676 F.2d 524, 528 (11th Cir. 1982). Judge Thornberry found such an approach "inconsistent with the concern for prudential restraint" and concurred on the ground that the case presented "extraordinary circumstances." *Id.* at 530.

Shelby County State's Attorney can be considered "in privity" with the Macon County State's Attorney.[12] Indeed, a fair reading of the state trial court's findings are to the contrary. Circuit Court Record Sheet.

In addition, the Shelby County State's Attorney has demonstrated that, in making the decision to prosecute, he acted within the strictures of state law. State law provides that transactional immunity can be granted only in a judicial proceeding. Indeed, in the earlier proceedings in this case, the state trial court had asserted and the state appellate court confirmed, albeit in dicta, that the Shelby County State's Attorney is not precluded from initiating this prosecution.

We also note that the Shelby County State's Attorney's action and the rulings of the Illinois state courts are in harmony with the earlier holdings of this court with respect to the limits of an Illinois state's attorney's authority and with respect to the obligation of such an official to advise a defendant about the legal consequences of his decisions. In *Staten*, 880 F.2d 962, the defendant pleaded guilty to a robbery charge in Iowa after being assured by the Illinois State's Attorney for Fayette County that he would not be prosecuted for a prison escape. At the time he gave the assurance, the State's Attorney was under the misapprehension that the escape had taken place within his jurisdiction; it actually had taken place in Champaign County. The State's Attorney of that county decided to prosecute. Relying on an earlier opinion of the Illinois Appellate Court in the same case, *Staten*, 158 Ill.App.3d 971, 110 Ill.Dec. 761, 511 N.E.2d 938, this court held that the Fayette County State's Attorney had no authority to promise not to prosecute an offense in Champaign County. *Staten*, 880 F.2d at 964. We further noted

that the defendant, "a former resident of Illinois, was aware of the law at the time of his escape. Furthermore Staten knew that he had escaped in Champaign County, not Fayette County." *Id.* at 966. The district court was of the view that *Staten* was not helpful in a resolution of the present case because, while the Fayette County State's Attorney had no jurisdiction over a crime that occurred in Champaign County, "the events underlying Arkebauer's case occurred in four counties including Macon and Shelby. Therefore, the Macon County State's Attorney could have properly granted Arkebauer immunity if he had completed the process by taking Arkebauer before a judge as required by Illinois law." *Arkebauer*, 751 F.Supp. at 787. We do not believe that this conclusion is compatible with our decision in *Staten*. In *Staten*, we pointed out that the defendant had the burden of knowing the limitations on the prosecutor's authority and how those limitations related to the defendant's actions. *Staten*, 880 F.2d at 966. In our view, Mr. Arkebauer has that same responsibility. The Macon County State's Attorney could not give him transactional immunity that would transcend county boundaries. Only a state judicial officer could do so. Mr. Arkebauer was charged with the responsibility of knowing this limitation on Ahola's authority.

Mr. Arkebauer's responsibility in this regard is not dissimilar from the responsibility we placed on the defendant in *United States v. Jordan*, 870 F.2d 1310 (7th Cir.), *cert. denied*, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989). There, the defendant contended that his guilty plea to a state offense incorporated an implied promise that he would not be subjected to additional prosecution. *Id.* at 1316. There was no question that the state's attorney knew

12. The state police who investigated the original plot to kill Ruhl's wife as well as the later murder of the police officer during the shootout are no doubt "agents of the state." *People v. Schmitt*, 173 Ill.App.3d 66, 122 Ill.Dec. 886, 527 N.E.2d 384, 405 (1988), *rev'd on other grounds*, 131 Ill.2d 128, 137 Ill.Dec. 12, 545 N.E.2d 665 (1989). However, as we noted in *Staten*, 880 F.2d at 965, the Illinois State Police work in an agency relationship with the state's attorneys.

While the Illinois Appellate Court believed that agents conducted their investigation in such a way as to make it reasonable to think that all subsequent interviews were part of the original understanding with the State's Attorney of Macon County, neither the state court nor the district court found that the Shelby County State's Attorney had ever given the police actual or apparent authority to act on his behalf.

that the defendant was subject to federal prosecution. *Id.* at 1317. The court held that *Santobello* was inapplicable because "[i]n failing to advise Jordan of the possibility of federal prosecution, the State made no explicit promise or misrepresentation to Jordan. The issue was not misrepresented because it was not represented at all." *Id.* at 1316. We relied on *Jordan* in holding that a defendant's mistaken belief about the scope of a police officer's promise did not render his confession involuntary. *Pharr v. Gudmanson*, 951 F.2d 117, 120 (7th Cir.1991). In *Pharr*, the police officer promised that the defendant would not be charged with the state offense of theft of purses if he confessed but would simply be given a municipal citation for retail theft. The defendant mistakenly believed that the officer's representation rendered him immune from all state charges. He was later prosecuted in a neighboring jurisdiction for the state charge of concealing stolen property. *Cf. United States ex rel. Robinson v. Israel*, 603 F.2d 635, 637–38 (7th Cir.1979) (en banc), *cert. denied sub nom. Robinson v. Wolff*, 444 U.S. 1019, 100 S.Ct. 675, 62 L.Ed.2d 650 (1980) (stating that there was no breach of the plea agreement when judge and prosecutor sent post-conviction letter to parole board advocating maximum incarceration under sentence imposed and plea did not address parole eligibility). The Shelby County State's Attorney made no promises to Mr. Arkebauer, nor did he bestow either actual or apparent authority on anyone to act on his behalf. He merely exercised the authority vested in him by Illinois law. There is no judicial finding that he engaged in any deceptive practice with respect to Mr. Arkebauer. Under these circumstances, we cannot conclude that the State's Attorney's actions are the sort of harassment or vindictiveness that usually has been the basis for a finding of bad faith under the *Younger* doctrine.

■ Because we cannot accept the argument that this case is governed by the "bad faith" exception to the *Younger* doctrine, we now examine whether the other established exception—"extraordinary circumstances"—affords the defendant relief. This exception is a nebulous one. However, it is clear that, in order to invoke it, a court "must find that an extraordinarily pressing need for immediate federal equitable relief exists, and that if relief is not granted, irreparable injury to the plaintiff will result." *Rowe*, 676 F.2d at 530 (Thornberry, J., concurring).

The only concrete example mentioned by the *Younger* Court of "other extraordinary circumstances" that would be so pressing as to merit federal court intervention is the threat created when

> a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph and in whatever manner and against whomever an effort might be made to apply it.

*Younger*, 401 U.S. at 53–54, 91 S.Ct. at 755 (quoting *Watson*, 313 U.S. at 402, 61 S.Ct. at 967). We do not have, at least on this record, a situation that can be characterized as presenting a flagrant and patent violation of the federal constitution. In his brief, Mr. Arkebauer reminds us of our observation in *Palumbo*, 897 F.2d at 246, regarding the important function of immunity promises. We do not think, however, that this policy concern, unaccompanied by a constitutional violation, can justify a federal injunction against a state criminal prosecution. As we have previously discussed, our earlier precedent makes it clear that the mandate of *Santobello* that "[a]ny agreement made by the government must be scrupulously performed and kept," *Lyons*, 670 F.2d at 80,[13] is not implicated on the record presented here.

Finally, we emphasize that we decide here only the narrow issue of whether, on this record, federal injunctive relief may be granted during the pendency of an ongoing state criminal proceeding. We express no view as to how the state courts might deal with this matter in further review. Nor, of course, does our declining to intervene through the federal injunctive power indi-

---

13. *Accord United States v. Brimberry*, 744 F.2d 580, 587 (7th Cir.1984).

cate any approval of the standards of prosecutorial decision-making displayed here.

## Conclusion

The judgment of the district court is reversed.

REVERSED.